[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Donald Charette, Anthony Zappone, Kenneth Goggins, Andrew Stolfi, Peter Murphy, Thomas Bliss, Nicholas Terni, Jr. and Joseph Santoro, appeal from the decision of the city of Waterbury retirement board (board), approving the recalculation and reduction of their pension benefits. The plaintiffs bring this appeal pursuant to § 2709 of the charter of the city of Waterbury.
The plaintiffs are retired firefighters who worked for the city of Waterbury (City). The terms of their employment and retirement are governed by the collective bargaining agreement between the City and the Local 1339 International Association of Fire Fighters, effective between the years of 1995 and 1999. Under that agreement, the plaintiff were required to elect one of two possible pension plans. All of the plaintiffs chose to have their pension benefits calculated pursuant to "option one" set forth in Article XXXIII, § 9 of the agreement. The plaintiffs thereafter applied for, and received, retirement and disability benefits.
On March 2, 2001, Richard Russo, director of finance for the City, and Palma Brustat, pension and benefits administrator for the City, notified the plaintiffs that an error was made with respect to their pension calculations, resulting in an overpayment of benefits. The City indicated that it neglected to apply the "base pay cap," as defined in the agreement, to the plaintiffs' disability pension plans. On April 17, 2001, the board convened a public meeting and voted unanimously to approve the plaintiffs' recalculated pensions.[1] The plaintiffs now appeal from the board's decision.[2]
The plaintiffs allege in their amended appeal, filed on June 6, 2001, that the board acted arbitrarily, illegally and in abuse of its discretion in approving the City's recalculation of their pension CT Page 10133 benefits. In support of their appeal, the plaintiffs set forth the following claimed errors: (1) the hearing was inadequate because (a) the "invitation" was improper, (b) the plaintiffs were denied the right to conduct discovery, depose and cross-examine witnesses; (2) the board did not conduct a fair and impartial hearing; (3) the board's decision was not supported by the record; and (4) the board lacked the authority under the collective bargaining agreement to modify the plaintiff's retirement benefits.[3]
"Pleading and proof of aggrievement [is] . . . a prerequisite to a trial court's jurisdiction over the subject matter of an appeal." Downeyv. Retirement Board, 22 Conn. App. 172, 176, 576 A.2d 582, cert. denied,216 Conn. 811, 580 A.2d 61 (1990). "The question of aggrievement is essentially one of standing . . . unless the plaintiff establishe[s] that he was aggrieved by the decision of the board, he [has] no standing to appeal." Id.
"Aggrievement, when not based upon a specific statute, is determined by way of a well-settled two fold test. First, the plaintiff must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision. Second, [he] must successfully establish that this interest has been specially and injuriously affected by the decision. . . . Further, an aggrieved party must have a claim that is distinguishable from the concerns of the community at large." Downey v.Retirement Board, supra, 22 Conn. App. 172.
The plaintiffs allege that they each elected to retire and receive retirement and disability benefits. They also allege that they were granted a pension in accordance with their individual understanding of the collective bargaining agreement and the estimates provided by the board. The plaintiffs further aver that the board's decision to uphold the recalculation of their benefits substantially reduced their pensions, thus requiring them to repay an alleged overpayment.
The defendants challenge the plaintiffs' right to appeal the board's decision. They assert that the plaintiffs are not parties to the collective bargaining agreement. As a result, the plaintiffs have no specific, personal and legal interest in this action.
Section 2709 of the charter of the city of Waterbury governs an appeal from the decision of the Waterbury retirement board to the Superior Court. Section 2709 provides in part that "[a]ny person aggrieved by any decision of said retirement board may, within fifteen days from the date when such decision was rendered, take an appeal to the [Superior Court] for the judicial district of Waterbury in New Haven County." The board's decision to reduce the pension benefits of a city employee is just the CT Page 10134 type of action contemplated by § 2709 of the charter. See Downey v.Retirement Board, supra, 22 Conn. App. 177 (holding that plaintiff was aggrieved by board's decision denying request to be rehired and removed from disability pension rolls); Innaimo v. City of Waterbury, Superior Court, judicial district of Waterbury, Docket No. CV99-0146439S (August 24, 2000, D'Addabbo, J.) (concluding that plaintiff was aggrieved by board's decision to award disability pension at percentage rate of fifty percent).
The court therefore finds that the plaintiffs are aggrieved by the board's decision and, accordingly, have standing to pursue this appeal.
Section 2709 of the charter provides, in relevant part, that "[a]ny person aggrieved by any decision of said retirement board may, withinfifteen days from the date when such decision was rendered, take an appeal to the [Superior Court] for the judicial district of Waterbury in New Haven County. Notice of such appeal shall be given by leaving a true and attested copy thereof with said retirement board within twelve days before the return date to which such appeal was taken." (Emphasis added.)
The board rendered its decision on April 17, 2001. On April 27, 2001, the plaintiffs' appeal was commenced by service of process on the city, the board, Palma Brustat, Richard Russo and Joseph Cronin.[4] On April 28, 2001, the plaintiffs commenced services of process to Robert Lyons and J. Paul Vance. Finally, on May 4, 2001, the plaintiffs served Jennie Pica, Genevieve Cavellerano and Philip Giordano.[5]
The court finds that the plaintiffs' appeal was commenced in a timely manner with respect to the defendants who were served on April 27, 2001, and April 28, 2001. The appeal was filed within fifteen days of the board's April 17, 2001, decision and notice was given within twelve days before the return date of May 22, 2001. The plaintiffs' appeal is, however, untimely with respect to the defendants who were served on May 4, 2001, because the appeal was not commenced within fifteen days of the date of the board's decision. Accordingly, the appeal is dismissed with respect to the parties served on May 4, 2001, namely Jennie Pica, Genevieve Cavellerano and Philip Giordano.
"The court's function is limited to the examination of the record to determine whether the ultimate decision was factually and legally supported to ensure that the board did not act illegally, arbitrarily or in abuse of its discretion. . . . Without question agency action which is unconstitutional, contrary to law, illegal, or beyond the power granted to the agency is arbitrary, capricious, unreasonable, or an abuse of discretion. . . ." Downey v. Retirement Board, supra, 22 Conn. App. 180-81. CT Page 10135
"The substantial evidence rule governs judicial review of administrative fact-finding under [the Uniform Administrative Procedure Act]. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the [plaintiff] to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record."MacDermid, Inc. v. Dept. of Environmental Protection, 257 Conn. 128,136, 778 A.2d 7 (2001).
The plaintiffs now appeal the board's decision to approve the recalculations of their pensions. In support of their appeal, the plaintiffs raise the following arguments: (1) the board improperly applied the "base pay cap" to their disability pensions; (2) the collective bargaining agreement unambiguously applies the "base pay cap" solely to "option one" pension plans and not disability pension plans; and (3) even if the court finds the collective bargaining agreement to be ambiguous, the record does not support the board's decision.
 A The Collective Bargaining Agreement
The crux of this appeal involves the interpretation of the collective bargaining agreement. Article XXXIII, § 9, ¶ 374 provides in relevant part that "each employee must elect, in writing, either one of the following options (Option One or Option Two) in regard to that employee's pension or pension entitlement formula." Section 9, ¶ 375 states that the maximum amount of a pension under "option one" shall be the amount of that employee's base pay, "as the term . . . is defined in paragraph 375e — Option Two — hereof." Base pay is comprised of the following: "(1) the employee's weekly base salary . . . multiplied by (52) weeks plus (2) the appropriate longevity pay . . . plus(3) . . . Holiday payments (12 months), plus (4) if applicable . . . Regular Fire Drivers Pay."
"Option one" pension plans are, however, limited by a "base pay cap." Section 9, ¶ 375a of the agreement stipulates that "[o]ption [o]ne employee's pension or pension entitlement, in terms of years of service computation, shall be . . . subject to an overall limitation of 35 years or a seventy percent (70%) maximum on the amount of the pension, per this formulation, as limited by the said `base pay cap.'" Finally, § 11 provides in relevant part that "an employee who applies for, and CT Page 10136 receives, a disability pension . . . shall receive, a maximum disability pension of seventy-six percent (76%) of BASE PAY. The term BASE PAY as used herein is defined as per the provisions of Section 9 hereof."
The parties dispute whether the collective bargaining agreement is clear on its face. The plaintiffs argue that the agreement is unambiguous and, accordingly, the court must consider its interpretation as a matter of law. The defendants contend, however, that the agreement is ambiguous, thus requiring a factual determination of the parties' intent. If this is the case, the defendants argue, then the court must defer to the board's factual findings.
General contract law governs the interpretation of collective bargaining agreements. Anderson v. Pension Retirement Board,167 Conn. 352, 354, 355 A.2d 283 (1974). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . On the other hand, [w]hen an ambiguous term is at issue, the trial court can examine the extrinsic evidence to resolve the question of the parties' intent." Regency SavingsBank v. Westmark Partners, 70 Conn. App. 341, 345, 796 A.2d 567 (2002).
It is undisputed that the plaintiffs filed for, and received, disability and retirement benefits. The defendants argue that the plaintiffs' disability pensions are subject to the "base pay cap." Section 11 of the agreement does not, however, refer directly to the "base pay cap." The agreement states that the base pay of a disability pension should be calculated using the definition of base pay provided for years of service pensions. To further complicate the matter, base pay is defined under the provisions pertaining to "option two" plans. Moreover, the "base pay cap" only applies to "option one" plans. Finally, § 9 states that the "base pay cap" limits an employee's pension "in terms of years of service computation. . . ."
The language of the collective bargaining agreement is not definitive. It is unclear whether the "base pay cap" applies to both service of years plans and disability plans. Accordingly, the proper interpretation of the agreement depends upon the intent of the parties, which is necessarily a factual determination. Tallmadge Bros., Inc. v. Iroquois Gas TransmissionSystem, L.P., 252 Conn. 479, 495, 746 A.2d 1277 (2000). The court must therefore look to the record to determine whether there is substantial evidence supporting the board's decision with respect to the appropriate construction of the agreement.[6]
CT Page 10137
 B Whether There is Substantial Evidence To Support the Board's Interpretation of the Collective Bargaining Agreement and, Ultimately, its Decision to Approve the Recalculation of the Plaintiffs' Disability and Retirement Benefits
The plaintiffs argue, in the alternative, that if the agreement is ambiguous, the court must sustain their appeal because the record is devoid of evidence relating to the parties' intent in forming the agreement. The defendants reply that the record supports the board's decision.
Aside from the contract itself, the record does not contain any evidence relating to the formation of the collective bargaining agreement. The defendants argue that the board conducted an investigation and met with the parties. There is nothing in the record evidencing this alleged investigation. There is no correspondence in the record between the parties with respect to the agreement. The court cannot rely solely on the defendants' assertion that there was an investigation regarding the agreement when there is no proof of such in the record.
The transcript of the public hearing also offers little in the way of evidentiary support. At the hearing held on April 17, 2001, the plaintiffs' attorney articulated their position with respect to the recalculation. Without any discussion or testimony regarding the agreement itself, the board voted unanimously to approve the recalculation. The board did not provide any rationale whatsoever for its decision.
Finally, the defendants argue that the board members' specialized knowledge of Waterbury union agreements substantiates the board's decision. An agency may rely on the expertise of its members when arriving at a decision. Briggs v. State Employees Retirement Commission,210 Conn. 214, 219, 554 A.2d 292 (1989). This does not, however, remove the agency's obligation to support its decision with substantial evidence. MacDermid, Inc. v. Dept. of Environmental Protection, supra,257 Conn. 136-37. Thus, the board members' specialized knowledge does not counteract the lack of evidence in the record.
A review of the record demonstrates that the board could only have based its decision upon the terms of the collective bargaining agreement itself. Because the agreement is ambiguous, and there is a dearth of evidence regarding the formation of the agreement, the court cannot affirm the board's decision to recalculate the plaintiffs' pension CT Page 10138 benefits.
For the foregoing reasons, the appeal is sustained.
By The Court
SCHEINBLUM, J.